# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 10, 2020        Decided March 13, 2020

No. 19-1146

IN RE: AMMAR AL BALUCHI, A/K/A ALI ABDUL AZIZ ALI,
PETITIONER

---

On Petition for a Writ of Mandamus to the
United States Court of Military Commission Review

---

*Alka Pradhan*, Counsel, Office of Military Commissions, argued the cause for petitioner. With her on the petition for a writ of mandamus and reply was *Benjamin R. Farley*, Trial Attorney.

*Danielle S. Tarin*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the opposition to the petition for writ of mandamus was *Joseph F. Palmer*, Attorney.

Before: TATEL and GARLAND, *Circuit Judge*s, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Guantanamo detainee Ammar al Baluchi is one of five co-defendants facing capital charges related to the planning of the September 11 attacks. Al Baluchi alleges that prior to his transfer to Guantanamo Bay and his

prosecution before a military commission, he was "detained incommunicado, and tortured for [three and a half] years in black sites [run] by [the] CIA." Pet'r's Br. 10. In defending against the capital charges, al Baluchi contends that his torture renders certain incriminating statements key to the government's case inadmissible. According to al Baluchi, in order to make that defense, he needs evidence from one particular detention center, so-called "Site A," which the government plans to "decommission"—i.e., destroy—in the near future. He therefore seeks a writ of mandamus, asking us to prevent the government from proceeding with the site's destruction. The government, however, has produced digital and photographic representations of Site A and al Baluchi cannot show, as he must, that it is clear and indisputable that those representations are so insufficient as to warrant the extraordinary remedy of mandamus.

## I.

As relevant here, al Baluchi was apprehended in Pakistan in early 2003. Al Baluchi alleges that from his arrest in 2003 until his transfer to Guantanamo Bay in 2006, he was held at one or several CIA "black sites," where he claims the United States held him "incommunicado" and subjected him to prolonged torture. Pet'r's Br. 10. In hand-written notes, al Baluchi describes being "suspended . . . naked" for long periods of time in a darkened cell and restrained by handcuffs for "120 days straight" that became "so rusted" they required removal "by bolt cutters." *United States v. Mohammad*, Military Commission Appellate Exhibit ("AE") 524NN (Aug. 22, 2018), Attach. C at 1, 3. He further recalls having his head "smashed. . . against the wall repeatedly" and "harsh music" continuously "blast[ed] . . . for weeks" to deprive him of sleep. *Id.* at 1, 5. The government concedes that "CIA

personnel subjected [al Baluchi] to Enhanced Interrogation Techniques," Resp't's Br. 10 n.6.

Al Baluchi alleges that immediately prior to his transfer to Guantanamo Bay, CIA personnel held him at one particular detention facility: Site A. Although our court has had no occasion to address Site A, it has been the subject of litigation in the district court. In 2011, in response to habeas corpus petitions filed by al Baluchi and nine other detainees—all unrelated to this case—the government filed a classified, *ex parte* motion asking the district court for authority "to substitute digital, photographic, and physical preservation methods for preservation *in situ* of [a particular] physical overseas detention site that was formerly used to detain at least one of the ten habeas petitioners." Resp't's Br. 7 (internal quotation marks omitted). The government confirms that the site at issue in that proceeding was Site A, the same facility used to detain al Baluchi.

In lieu of preserving the physical site, the government proposed creating a "digital and photographic record" and sought a finding from the Court that such a digital record would "satisf[y] discovery and preservation orders . . . in some or all of the underlying habeas cases." *Al-Shibh v. Obama*, No. 06-1725, slip op. at 2, 5 (D.D.C. filed May 9, 2012). Specifically, the government proposed to demolish the site after documenting it using the same techniques employed when it decommissioned a detention center in Bagram, Afghanistan. To preserve evidence related to the Bagram site, the government "generate[d] an interactive digital virtual tour based on GPS data; laser scanning; total station survey data; spherical photography; still photography; manual measurements; blueprints and source data; and aerial lidar and imagery." *Id*. (internal quotation marks omitted). The government also preserved "blueprints, official photographs,

4

and other records in the Department of Defense's possession that reflect the interior of [Bagram] since the United States assumed control of the facility." *Id.* The district court ordered the government to "take all of the preservation steps outlined in the stipulation regarding substitute preservation methods at Bagram," and granted the government's substitution request in May 2012. *Id.* at 12, 20.

That same month, proceedings against al Baluchi and his alleged co-conspirators commenced before a military commission, and the government filed an *ex parte*, *in camera* motion seeking permission to begin destruction of Site A and to substitute digital documentation for physical preservation. The government provided defense counsel with an unclassified version of the filing, which described "the type of information the government sought to preserve through digital means." Resp't's Br. 10. In response, defense counsel filed several motions opposing destruction and seeking discovery related to Site A.

In 2013, the military commission ruled that at least some of the information regarding Site A was discoverable, and, deferring a ruling on precisely what the government was required to disclose, ordered the government to "preserve any existing evidence of any overseas detention facility used to imprison any of the defendants or potential witnesses in this case, including maintaining any structure or fixture in its current state." *United States v. Mohammad*, AE 080G at 1 (Dec. 19, 2013).

In June 2014, however, the military commission issued an *ex parte, in camera* classified order granting the government's motion to substitute digital and photographic evidence and to decommission Site A. At that time, the defense's remaining motions related to Site A—including a motion to visit the

detention center and conduct discovery—remained pending. The government then began decommissioning the site.

After learning of Site A's partial decommissioning and receiving a truncated, summarized version of the government's photographic and digital documentation, al Baluchi moved for a stay of the site's destruction, which the Commission granted. Al Baluchi objected to any further destruction of the site and reiterated his requests to inspect the site first-hand or, at the least, obtain additional information about the site from the government.

In a January 2018 ruling, the military commission denied al Baluchi's requests for access to Site A and to pause proceedings until the government produced additional information on Site A. Noting that "[c]rime scenes and related locations wherein relevant physical evidence is collected are routinely released to their owners after being documented," the Commission explained that "[w]hat occurred in this situation is no different from what takes place in Federal and State courts across the country, except perhaps that the 'scene' in this case consists of highly classified information." *United States v. Mohammad*, AE 425PP at 15–16 (Jan. 19, 2018). Al Baluchi and his co-defendants, the Commission concluded, "retain[ed] the ability to present other comparable evidence" of the detention center, and "to include testimonial evidence, documentary evidence, and the Commission-approved summary of the physical evidence." *Id.* at 15. The Commission then denied al Baluchi's subsequent motion to compel additional evidence of Site A. Having ruled on the outstanding discovery motions, the Commission concluded that "there is no longer a compelling reason" to stay the implementation of the Commission's order approving Site A's destruction and lifted its earlier stay. *United States v. Mohammad*, AE 052SS at 3 (Apr. 20, 2018).

Along with several other co-defendants, al Baluchi then filed a petition for a writ of mandamus with the Court of Military Commission Review (CMCR) challenging the rulings. Because of recusals related to one of al Baluchi's alleged co-conspirators, the CMCR lacked a quorum. Ultimately hearing the case in 2019, the CMCR denied the petition. The CMCR concluded that "the military judge's orders permitting substitute evidence for Site A and granting the government permission to destroy it were not abuses of discretion," reasoning that petitioners "failed to adequately explain why the substitute evidence approved by the military judge is insufficient" or "why in considering any post-conviction appeal [a reviewing court] would have a need to visit Site A, let alone a need that supplants the burden on the government for keeping the facility as it is for many years to come." Resp't's Br., Attach. A at 14. At al Baluchi's urging and with the government's consent, the Commission agreed to stay the destruction order until our Court ruled on the issue. This petition for a writ of mandamus followed, seeking "to enjoin the military commission from lifting its stay" of further destruction of Site A. Pet'r's Br. 25.

## II.

The Military Commissions Act of 2009 vests this court with jurisdiction to review only "final judgment[s] rendered by . . . military commission[s]." 10 U.S.C. § 950g(a). And although the All Writs Act permits us to "issue all writs necessary or appropriate in aid of [our] . . . jurisdiction[]," 28 U.S.C. § 1651(a)—that is, "we can issue a writ of mandamus *now* to protect the exercise of our appellate jurisdiction *later*"—mandamus disrupts the "important purpose" served by the Military Commission's final judgment rule, *In re al-Nashiri* ("*Al-Nashiri I*"), 791 F.3d 71, 76, 78 (D.C. Cir. 2015). Accordingly, when addressing mandamus petitions in the

context of the military commissions, we must "faithfully enforce the traditional prerequisites for mandamus relief." *Id.* at 78.

"[T]hree conditions must be satisfied before [a writ of mandamus] may issue." *Cheney v. United States District Court for District of Columbia*, 542 U.S. 367, 380 (2004). "First, 'the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires'—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* at 380–81 (alteration in original) (citation omitted) (quoting *Kerr v. United States District Court for Northern District of California*, 426 U.S. 394, 403 (1976)). "Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable." *Id.* at 381 (internal quotations omitted). "Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

## A.

Al Baluchi argues that he has no other adequate means to seek the evidence he needs because the government's digital and photographic documentation of Site A is an inadequate substitute for the original evidence contained at the site itself. In other words, this is a discovery dispute. In the "normal course, . . . mandamus is not available to review a discovery order," *In re: Executive Office of President*, 215 F.3d 20, 23 (D.C. Cir. 2000), because "[m]andamus is inappropriate in the presence of an obvious means of review: direct appeal from final judgment," *Al-Nashiri I*, 791 F.3d at 78. Mandamus is appropriate, however, where review of an order "after final judgment is obviously not adequate." *In re: Executive Office of President*, 215 F.3d at 23. So, for example, if a lower court's

order risks disclosing highly privileged information, mandamus may be the only way to ensure the issue is subject to appellate review; in such cases, by the time of a direct appeal of a final judgment, the issue would be moot. *See, e.g.*, *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) (explaining how "[d]isclosure followed by appeal after final judgment is obviously not adequate in such cases").

So too with the destruction of pertinent evidence at Site A. If the commission erred in approving the decommissioning of Site A and allowing digital and photographic documentation to serve as a substitute, then any review of that decision would be impossible by the time of direct appeal because, simply put, Site A would no longer exist. The physical destruction of evidence is a quintessential type of "irreparable" injury that makes mandamus appropriate; it is an irreversible injury that frustrates later appellate review. *See Al-Nashiri I*, 791 F.3d at 78. Mandamus is therefore a proper vehicle for seeking a stay of Site A's destruction.

The government counters that al Baluchi "could seek . . . relief for lost or destroyed evidence that he claims was material to his defense . . . from the military commission, or from USCMCR or this Court on appeal." Resp't's Br. 32. But that potential relief is very much second-best; indeed, that is the entire basis of al Baluchi's claim. Following Site A's destruction, al Baluchi would be reduced to seeking adverse inferences or other, alternative forms of relief that would potentially *compensate* him for the lost ability to obtain favorable evidence. Such relief would not provide al Baluchi with the same benefits as *access* to that evidence in the first instance. Moreover, it is far from clear that al Baluchi could even seek the relief the government imagines because, as the government readily admits, "[i]t is unclear whether the spoliation doctrine applies in the criminal context." *Id.* at 34

n.9. The government's suggested alternatives, in short, fail to show that al Baluchi has "other *adequate* means" to attain the relief he seeks. *Cheney*, 542 U.S. at 380 (emphasis added).

This conclusion, however, does not apply to al Baluchi's claim that mandamus is necessary not only because the digital and photographic documentation of Site A is inadequate, but also because the government's unclassified *summary* of that documentation is deficient. Unlike his claim to evidence of Site A itself, a challenge to the "summary" of the digital and photographic record is available on direct appeal, as "the original detailed video and photographic representations of the physical evidence have been sealed and incorporated into the record." *United States v. Mohammad*, AE 425PP at 14 (Jan. 19, 2018). A writ of mandamus based on the summary, accordingly, cannot be "in aid of [our] appellate jurisdiction," *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943), because the complete digital and photographic documentation of Site A will be in the record regardless of whether we review the adequacy of the summary now or later.

## B.

Even if mandamus is an appropriate vehicle for seeking Site A's preservation, al Baluchi is entitled to the writ only if he can demonstrate that it is "clear and indisputable" that the Commission abused its discretion in allowing proceedings to continue while the government decommissioned Site A. The "clear and indisputable" standard is demanding. *Cheney*, 542 U.S. at 381 (internal quotation marks omitted). "An erroneous [lower] court ruling . . . by itself does not justify mandamus. The error has to be clear." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 762 (D.C. Cir. 2014). As our court has explained, a petitioner's right to relief is "clear and indisputable" where he or she can point to "cases in which a federal court has held

that" relief is warranted "in a matter involving like issues and comparable circumstances." *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 355 (D.C. Cir. 2007) (internal quotation marks omitted). Accordingly, we will deny mandamus even if a petitioner's argument, though "pack[ing] substantial force," is not clearly mandated by statutory authority or case law. *In re Khadr*, 823 F.3d 92, 99–100 (D.C. Cir. 2016). Al Baluchi contends that he has overcome this demanding hurdle because it is "clear and indisputable" that Site A's destruction deprives him of a "meaningful opportunity to present a complete defense." Pet'r's Br. 34.

It is axiomatic that criminal proceedings must "comport with prevailing notions of fundamental fairness," *California v. Trombetta*, 467 U.S. 479, 485 (1984), which include "what might loosely be called the area of constitutionally guaranteed access to evidence," *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). In the context of military commissions, those constitutional safeguards are codified by statute and regulation. The 2009 Military Commissions Act provides that "the procedures and rules of evidence" in such proceedings "shall include, at a minimum . . . [the accused's right] to examine and respond to all evidence admitted against the accused on the issue of guilt or innocence and for sentencing." 10 U.S.C. § 949a(b)(2)–(b)(2)(A). The Rules for Military Commissions breathe further life into this directive. Military Commission Rule 701(e), for example, requires that "the trial counsel shall . . . disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to: (A) Negate the guilt of the accused of an offense charged; (B) Reduce the degree of guilt of the accused with respect to an offense charged; or (C) Reduce the punishment," R.M.C. 701(e)(1), as well as disclose "evidence . . . that reasonably may be viewed as mitigation evidence at sentencing," *id.* 701(e)(3). Rule 701(c) further provides that

11

"the Government shall permit the defense counsel to examine . . . [a]ny . . . tangible objects, buildings, or places . . . which are material to the preparation of the defense." R.M.C. 701(c)–(c)(1).

The Commission concluded that digital and photographic depictions of Site A would satisfy the government's burden under these rules and that al Baluchi's prosecution could therefore continue while Site A was destroyed. In so concluding, the Commission applied Military Commission Rule 703. That rule mandates that while generally "a party is not entitled to the production of evidence that is destroyed, lost, or otherwise not subject to compulsory process," if "such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge may grant a continuance or other relief in order to attempt to produce the evidence . . . or," if that evidence cannot be produced, "shall abate the proceedings." R.M.C. 703(f)(2)(A)–(B). Explaining that the Commission analyzes Rule 703 motions under a three-factor test drawn from the Court of Appeals for the Armed Forces, the Commission asked whether (1) the evidence was of such central importance to an issue that it is essential to a fair trial; (2) there was no adequate substitute for the evidence; and (3) the defense was not at fault for the evidence being destroyed. *See United States v. Simmermacher*, 74 M.J. 196, 201–02 (C.A.A.F. 2015); *United States v. Mohammad*, AE 114GG at 8 (Apr. 17, 2018) (applying same). Al Baluchi makes much of the government's alleged bad faith in destroying Site A, but the same three-factor test applies regardless of whether evidence is unavailable due to inadvertence or malfeasance. *See Simmermacher*, 74 M.J. at 201 ("While the due process standards . . . are still applicable to a constitutional due process inquiry for lost or destroyed evidence, R.C.M. 703(f)(2) is an *additional* protection the President granted to [military

defendants] whose lost or destroyed evidence fall within the rule's criteria." (emphasis added)); *see also United States v. Wood*, No. ARMY 20160465, 2018 WL 4191319, at \*3 (A. Ct. Crim. App. Aug. 28, 2018), *review denied*, 78 M.J. 245 (C.A.A.F. 2018) ("Constitutional due process protections of this kind require an appellant to prove bad faith on the part of the government. The Court of Appeals for the Armed Forces (CAAF), however, has held that . . . [b]ad faith need not be proven." (citations omitted)).

Applying that test, the Commission found that al Baluchi "failed to meet two of the three required criteria" and there was therefore no need to pause or abate proceedings due to Site A's destruction. *Mohammad*, AE 114GG at 8. Specifically, the Commission concluded that (1) "the evidence [related to Site A] is not of such central importance to an issue that the evidence is essential to a fair trial," and (2) regardless of Site A's importance, there were "adequate substitutes for the evidence" available. *Id.* at 9. For our purposes, then, the question is whether al Baluchi has shown that it is "clear and indisputable" that the Commission abused its discretion in arriving at those two conclusions. Because al Baluchi cannot carry his burden with respect to at least the Commission's second conclusion, we have no need to address the first.

Reviewing the digital and photographic evidence collected on Site A, the Commission concluded that al Baluchi had access to "adequate substitutes for the evidence." *Id.* at 8. Specifically, the Commission found that al Baluchi "continue[s] to have the ability to present other comparable evidence at trial, including, but not limited to" the "ability to present descriptions of the evidence/locations as contained in the discovery provided to the Defense" as well as "the opportunity to call or cross-examine witnesses who viewed the physical evidence and/or the treatment of the Accused" and

"the ability to testify themselves about the physical evidence or the treatment of the Accused." *Id.* Al Baluchi cannot show "clear[ly] and indisputabl[y]" that this conclusion was an abuse of discretion.

Quite to the contrary, substituting documentation for physical evidence is an accepted, even routine, evidentiary practice. As the Commission and the district court in the habeas litigation pointed out, courts do not indefinitely preserve physical locations when they contain relevant evidence. Instead, they allow documentary materials to stand in for that evidence. *See, e.g.*, 1 *Federal Evidence Practice Guide* § 2.10(3)(b) (2019) (Bender) ("The simplest and perhaps least controversial way to preserve a scene or object is by taking pictures of it. . . . It may be very difficult, particularly when a case concerns a location relatively remote from the court, to arrange for the fact-finder to view the premises. A good series of aerial photographs will enable the lawyer to bring that remote location to the courthouse."); *Annotated Manual for Complex Litigation* § 11.442 (David F. Herr ed., 4th ed., 2019) ("[A]lteration or destruction of physical evidence" is permitted, even "if opposing counsel objects").

Such substitutions, moreover, are especially appropriate in cases implicating national security. The Military Commissions Act itself authorizes military judges to allow the United States "to delete or withhold specified items of classified information" and to, instead, "substitute a summary" or "a statement admitting relevant facts that the classified information or material would tend to prove." 10 U.S.C. § 949p-4(b)(1)(A)–(C). It is undisputed that Site A contains reams of classified material; indeed, the unclassified appendix contains virtually no information on Site A at all. Given that the statute contemplates "delet[ion]" of classified information or its substitution, *id.* § 949p-4(b)(1)(A), it cannot be that al

Baluchi has a "clear and indisputable" right to the original evidence at Site A if alternative evidence is available. Al Baluchi contends that this Court or the CMCR may eventually remand for additional factfinding, but the mere possibility of later factfinding cannot override this clear statutory directive. Otherwise, *every* case would require the preservation of original classified information until a detainee exhausts his appeals.

Having concluded that substituting documentation for physical evidence is appropriate in *most* cases, we ask whether al Baluchi has shown, clearly and indisputably, that the documentation was inadequate in *this* case. Prior to the commencement of al Baluchi's military commission proceedings, the district court, relying on the government's preservation of evidence related to Bagram, ordered the government to document Site A using techniques that included "generat[ing] an interactive digital virtual tour based on GPS data; laser scanning; total station survey data; spherical photography; still photography; manual measurements; blueprints and source data; and aerial lidar and imagery." *Al-Shibh*, No. 06-1725, slip op. at 4. In a classified portion of his reply brief, al Baluchi contends that the government failed to preserve certain key aspects of Site A. But he never explains how, assuming the government complied with the district court's order, the existing record limits his ability to adequately litigate the voluntariness of his statements in light of the totality of the circumstances of his detention. We have reviewed the classified record ourselves and can confirm that the government took steps fully consistent with the district court's order. Al Baluchi has failed to show clearly and indisputably that those steps fall short of providing an adequate substitute for Site A itself.

## III.

For the foregoing reasons, we deny the petition for a writ of mandamus.

*So ordered.*