# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued June 2, 2020        Decided August 14, 2020

No. 20-5056

IN RE: HILLARY RODHAM CLINTON AND CHERYL MILLS,
PETITIONERS

On Petition for Writ of Mandamus
(No. 1:14-cv-01242)

*David E. Kendall* argued the cause for petitioners. With him on the petition for writ of mandamus and the reply were *Katherine M. Turner*, *Stephen L. Wohlgemuth*, *Suraj Kumar*, and *Beth A. Wilkinson*.

*Ramona R. Cotca* argued the cause for respondent Judicial Watch, Inc. With her on the response to the petition for writ of mandamus were *Lauren M. Burke* and *Paul J. Orfanedes*. *Michael Bekesha* entered an appearance.

*Mark R. Freeman*, Attorney, U.S. Department of Justice, argued the cause for respondent United States Department of State. With him on the response to the petition for writ of mandamus were *Hashim M. Mooppan*, Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney.

Before: GRIFFITH, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: This petition arises from a Freedom of Information Act ("FOIA") case brought by Judicial Watch, Inc. against the U.S. Department of State. *See Judicial Watch, Inc. v. Dep't of State*, No. 1:14-cv-1242 (D.D.C. filed July 21, 2014). Petitioners are former Secretary of State Hillary Rodham Clinton (a third-party intervenor in the case), and Secretary Clinton's former Chief of Staff, Cheryl Mills (a nonparty respondent in the case). On March 2, 2020, the District Court granted Judicial Watch's request to depose each Petitioner on a limited set of topics. On March 13, 2020, Secretary Clinton and Ms. Mills petitioned this Court for a writ of mandamus to prevent the ordered depositions. For the reasons detailed herein, we grant the petition in part and deny it in part – finding that although Secretary Clinton meets all three requirements for mandamus, Ms. Mills does not – and remand the case for proceedings consistent with this opinion. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004).

## I.

On May 13, 2014, Judicial Watch submitted a FOIA request to the State Department for records in the Office of the Secretary regarding Ambassador Susan Rice's September 16, 2012 television appearances. The request sought:

> Copies of any updates and/or talking points given to Ambassador Rice by the White House or any federal agency concerning, regarding, or related to the September 11, 2012 attack on the U.S. consulate in Benghazi, Libya.

> Any and all records or communications concerning, regarding, or relating to talking points or updates on the Benghazi attack given to Ambassador Rice by the White House or any federal agency.

Complaint at 2 ¶ 5, No. 1:14-cv-1242, ECF No. 1 (July 21, 2014) (lettering omitted). After the State Department failed to timely respond, Judicial Watch filed suit in the United States District Court for the District of Columbia on July 21, 2014, and the case was assigned to Judge Lamberth. *See id.* at ¶¶ 5-9. The State Department produced four responsive documents to Judicial Watch in November 2014 and provided a draft *Vaughn* Index in December 2014, Pl.'s Mot. for Status Conf. at 4 ¶ 5, No. 1:14-cv-1242, ECF No. 12 (Mar. 16, 2015). Judicial Watch subsequently requested a declaration describing the Department's search. S*ee* Third Joint Status Rep. at 2 ¶ 3(c), No. 1:14-cv-1242, ECF No. 16 (May 1, 2015). In joint status reports filed on December 31, 2014 and February 2, 2015, the parties informed the court that they might be able to settle the case or narrow the issues before the court, but that the State Department would first conduct additional searches for responsive documents by April 2015. *See* Joint Status Rep., No. 1:14-cv-1242, ECF No. 10 (Dec. 31, 2014); Joint Status Rep., No. 1:14-cv-1242, ECF No. 11 (Feb. 2, 2015).

In early March 2015, Judicial Watch learned that Secretary Clinton had used a private email server to conduct official government business during her tenure as Secretary of State. *See* Emergency Mot. at 3 ¶ 3, No. 1:14-cv-1242, ECF No. 13 (Mar. 16, 2015). And on August 21, 2015, it moved for limited discovery related to the State Department's record-keeping system during Secretary Clinton's tenure. *See* Mot. for Discovery at 6, No. 1:14-cv-1242, ECF No. 22 (Aug. 21,

2015). Contemporaneously, another district court judge, Judge Sullivan, was supervising a separate FOIA case between the same parties and considering similar discovery requests. *Judicial Watch, Inc. v. Dep't of State*, No. 1:13-cv-1363 (D.D.C. filed Sept. 10, 2013). In addition, the State Department's Inspector General, the FBI, and the House Select Committee on Benghazi were conducting independent investigations of Secretary Clinton's use of a private email server. As a result, Judge Lamberth delayed consideration of Judicial Watch's discovery request. Mem. and Order at 2-3, No. 1:14-cv-1242, ECF No. 39 (Mar. 29, 2016). Judge Sullivan ultimately granted Judicial Watch's request for discovery on the use of the private email server, ordered the disclosure of federal records from Ms. Mills and Huma Abedin (Secretary Clinton's former Deputy Chief of Staff), and authorized Judicial Watch to send interrogatories to Secretary Clinton and to depose Ms. Mills, among others. Mem. Order at 13-14, No. 13-cv-1363, ECF No. 73 (May 4, 2016).

On December 6, 2018, after the parties substantially completed discovery before Judge Sullivan and the government investigations had concluded, Judge Lamberth ordered additional discovery in this case. Mem. Op. at 1, 4-5, 9, No. 1:14-cv-1242, ECF No. 54 (Dec. 6, 2018). Although discovery in FOIA cases is rare, Judge Lamberth ordered the parties to develop a discovery plan regarding whether Secretary Clinton's "use of a private email [server] while Secretary of State was an intentional attempt to evade FOIA," "whether the State Department's attempts to settle this case in late 2014 and early 2015 amounted to bad faith," and "whether State ha[d] adequately searched for records responsive to Judicial Watch's request." Order, No. 1:14-cv-1242, ECF No. 55 (Dec. 6, 2018). On January 15, 2019, the District Court entered a discovery plan permitting Judicial

Watch to: depose "the State Department," several former government officials and employees, and a former Clinton Foundation employee; serve interrogatories on several other government officials; obtain via interrogatories the identities of individuals who conducted the search of the records; and discover unredacted copies of various relevant documents and any records related to the State Department's conclusion about the need to continue searching for responsive records. Mem. Op. and Order, No. 1:14-cv-1242, ECF No. 65 (Jan. 15, 2019). The District Court reserved a decision on whether to permit Judicial Watch to depose Petitioners, *id.* at 2, and Secretary Clinton subsequently intervened, Mot. to Intervene, No. 1:14-cv-1242, ECF No. 128 (Aug. 20, 2019); *see also* Order, No. 1:14-cv-1242, ECF No. 129 (Aug. 21, 2019) (granting the unopposed motion to intervene).

On March 2, 2020, after the January 15, 2019 round of discovery was substantially complete, the District Court authorized yet another round of discovery, including the depositions of Petitioners. *See* Mem. Order, No. 1:14-cv-1242, ECF No. 161 (Mar. 2, 2020). Although Judicial Watch had proposed a broader inquiry, *see* Status Rep. at 13-15, No. 1:14-cv-1242, ECF No. 131 (Aug. 21, 2019), the court limited the scope of Secretary Clinton's deposition to her reasons for using a private server and her understanding of the State Department's records-management obligations, Mem. Order at 6-10, ECF No. 161. The court also limited the scope of questions regarding the 2012 attack in Benghazi to both Petitioners' knowledge of the existence of any emails, documents, or text messages related to the attack. *Id.* at 10-11.

On March 13, 2020, Secretary Clinton and Ms. Mills filed a petition for writ of mandamus in this Court, requesting an order "directing the district court to deny Judicial Watch's

request to depose" them.  Pet. at 4.  Pursuant to this Court's order, Judicial Watch and the State Department each filed responses.[1]

**II.**

The common-law writ of mandamus, codified at 28 U.S.C. § 1651(a), is one of "the most potent weapons in the judicial arsenal," *see Will v. United States*, 389 U.S. 90, 107 (1967), and mandamus against a lower court is a "drastic" remedy reserved for "extraordinary causes," *Ex parte Fahey,* 332 U.S. 258, 259-60 (1947).  Mandamus lies only where the familiar tripartite standard is met: (1) the petitioner has "no other adequate means to attain the relief"; (2) the petitioner has demonstrated a "clear and indisputable" right to issuance of the writ; and (3) the Court finds, "in the exercise of its discretion," that issuance of the writ is "appropriate under the circumstances."  *Cheney*, 542 U.S. at 380-81.  Although these hurdles are demanding, they are "not insuperable," *id.* at 381, and a "clear abuse of discretion" by a lower court can certainly justify mandamus, *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953).

Applying this standard, we find the petition as to Secretary Clinton satisfies all three prongs, while the petition as to Ms. Mills fails to satisfy the first.  Since the "three threshold requirements are jurisdictional," regardless of Ms.

---

[1] Although the State Department does not support the petition for mandamus before this Court, it opposed the motions to grant discovery below, in relevant part. *See* Mem. in Opp., No. 1:14-cv-1242, ECF No. 27 (Sept. 18, 2015); Tr. of Proc. at 19-37, No. 1:14-cv-1242, ECF No. 53 (Oct. 16, 2018); Status Rep., No. 1:14-cv-1242, ECF No. 133 (Aug. 21, 2019); Tr. of Proc. at 28-39, No. 1:14-cv-1242, ECF No. 137 (Aug. 22, 2019); Status Rep., No. 1:14-cv-1242, ECF No. 154 (Dec. 18, 2019); and Tr. of Proc. at 21-31, No. 1:14-cv-1242, ECF No. 156 (Dec. 19, 2019).

Mills' petition's merit on the other two inquiries, we are bound to deny the writ and dismiss her petition for lack of jurisdiction. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

**A.**

Under the first prong of *Cheney*, Secretary Clinton and Ms. Mills must each have "no other adequate means to attain the relief" they request on mandamus. 542 U.S. at 380. Judicial Watch argues that the appropriate way for both Petitioners to garner review of the discovery order is to disobey it, be held in contempt, and then appeal that final order. *See* Judicial Watch Resp. at 12-14. However, while this is presently a viable path for Ms. Mills, a nonparty respondent, it is not for Secretary Clinton who has intervened and is a party in the case. *See* Mot. to Intervene, ECF No. 128; Order, ECF No. 129.

It is true that "in the ordinary case, a litigant dissatisfied with a district court's discovery order must disobey the order, be held in contempt of court, and then appeal that contempt order on the ground that the discovery order was an abuse of discretion." *In re Kessler*, 100 F.3d 1015, 1016 (D.C. Cir. 1996); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992); *In re Papandreou*, 139 F.3d 247, 250 (D.C. Cir. 1998). However, as we explained in *In re Sealed Case No. 98-3077*, "the disobedience and contempt route to appeal cannot be labeled an adequate means of relief *for a party-litigant*." 151 F.3d 1059, 1065 (D.C. Cir. 1998) (emphasis added); *see also In re City of New York,* 607 F.3d 923, 934 (2d Cir. 2010) (same). *In re Sealed Case No. 98-3077* raised the concern – elided in cases cited by Judicial Watch such as *Kessler* and *Papandreau* – that "[w]hile a criminal contempt order issued against a party is considered a

final order and thus appealable forthwith under 28 U.S.C. § 1291 . . . a civil contempt order issued against a party is typically deemed interlocutory and thus not appealable under 28 U.S.C. § 1291[.]" 151 F.3d at 1064 (citations omitted); *see also Byrd v. Reno*, 180 F.3d 298, 302 (D.C. Cir. 1999) (noting that unlike a criminal contempt order, a civil contempt order is not an appealable final order). Where, as here, a district court has broad discretion to hold a party refusing to comply with a discovery order in either civil or criminal contempt, "'a party who wishes to pursue the disobedience and contempt path to appeal cannot know whether the resulting contempt order will [in fact] be appealable.'" *In re Sealed Case No. 98-3077*, 151 F.3d at 1065 (quoting 15B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3914.23 (2d ed. 1992)). And since, in this case, potential contempt charges against Secretary Clinton would arise during ongoing litigation and not at the conclusion of the proceedings when a civil contempt adjudication might be appealable, this uncertainty is crucial. The discovery order at issue arises out of a civil FOIA proceeding. *See* Compl., ECF No. 1. Secretary Clinton, who is properly characterized as a party in that civil proceeding, simply cannot know *ex ante* whether refusal to comply will result in a non-appealable civil contempt order or an appealable criminal contempt order. Thus, "forcing a party to go into contempt is not an 'adequate' means of relief in these circumstances." *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014).

The same regime, however, does not apply to Ms. Mills, a nonparty respondent in the case. It is well settled that "a nonparty can appeal an adjudication of civil contempt[.]" 15B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3917 (2d ed. 1992); *see also U.S. Catholic Conference v.*

*Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned. The order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action.") (quoting *United States v. Ryan*, 402 U.S. 530, 532 (1971) and *Cobbledick v. United States*, 309 U.S. 323, 328 (1940)); *Petroleos Mexicanos v. Crawford Enters.*, *Inc.*, 826 F.2d 392, 398 (5th Cir. 1987); *United States v. Columbia Broad. Sys.*, 666 F.2d 364, 367 n.2 (9th Cir. 1982) (compiling cases). Since Ms. Mills could appeal either a civil or a criminal contempt adjudication, unlike Secretary Clinton she does have available an "adequate means to attain the relief" and as such her petition fails at prong one. *Cheney*, 542 U.S. at 380.

Petitioners argue that given the "congruence of interests" between Ms. Mills and Secretary Clinton, Ms. Mills might also somehow be prevented from appealing a civil contempt adjudication. Pet'r Reply at 3 n.1. However, this concern arises primarily in cases where sanctions are imposed jointly and severally upon both a party and a nonparty, requiring the court to evaluate whether the nonparty can appeal in a way that does not implicate the rights of the party. *See, e.g.*, *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 926 F.3d 534, 538-39 (9th Cir. 2019); *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 747 F.2d 1303, 1305 (9th Cir. 1984). But here, we are not faced with uncleavable interests. Ms. Mills could directly appeal a civil contempt citation and obtain relief without impacting whether Secretary Clinton must sit for her separate deposition.

Finally, considering the burden the depositions would place on Petitioners given their scope and complete irrelevance to this FOIA proceeding (discussed in further detail *infra* at subsections B and C), we need not reach

Petitioners' and Respondent's arguments regarding how Secretary Clinton and Ms. Mills' status as former Executive Branch officials might play into our analysis. *See* Pet. at 23-32; Judicial Watch Resp. at 12-14.

**B.**

Next, we turn to the second prong of the *Cheney* test, asking whether the District Court's Order granting Judicial Watch's request to depose Petitioners constituted a "clear and indisputable" error. 542 U.S. at 381. Petitioners can carry their burden in this inquiry if the challenged order constitutes a "clear abuse of discretion." *Id.* at 380. Although a district court has "broad discretion to manage the scope of discovery" in FOIA cases, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), we find the District Court clearly abused its discretion by failing to meet its obligations under Rule 26 of the Federal Rules of Civil Procedure, by improperly engaging in a Federal Records Act-like inquiry in this FOIA case, and by ordering further discovery without addressing this Court's recent precedent potentially foreclosing any rationale for said discovery.

In the vast majority of FOIA cases, after providing responsive documents, the agency establishes the adequacy of its search by submitting a detailed and nonconclusory affidavit on a motion for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also SafeCard Servs.*, 926 F.2d at 1200. These affidavits are to be accorded a presumption of good faith and cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). Although, as a general rule, discovery in a FOIA case is "rare," *Baker & Hostetler LLP v. U.S. Dep't of*

*Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (quoting *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002)), courts may order limited discovery where there is evidence – either at the affidavit stage or (in rarer cases) before – that the agency acted in bad faith in conducting the search, *see Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) (affirming the district court's finding that plaintiff had not made a sufficient showing of bad faith, so summary judgment without discovery was warranted).

It is this bad-faith hook that the District Court used to justify several rounds of discovery in this case. In March 2016 the District Court authorized discovery into whether the State Department's attempts to settle the FOIA case in late 2014 and early 2015 – before Secretary Clinton's use of a private server became public knowledge – amounted to bad faith. Memo. and Order at 1-2, ECF No. 39; *see also* Memo. and Order at 7, ECF No. 65. Judge Lamberth explained that given recent developments, the case had "expanded to question the motives behind Clinton's private email use while Secretary, and behind the government's conduct in this litigation." Memo. and Order at 1, ECF No. 65. In its March 2, 2020 order authorizing yet more discovery – including the depositions at issue here – the District Court again acknowledged that discovery in FOIA cases is "rare" but reminded the parties of its view that "it was State's mishandling of this case – which was either the result of bureaucratic incompetence or motivated by bad faith – that opened discovery in the first place." Memo. Order at12, ECF No. 161.

However, in finding suspicions of bad faith by the State Department opened the door for these far-reaching depositions of Petitioners, the District Court clearly abused its discretion in at least three ways. First, the District Court

abused its discretion by failing to "satisfy[] its Rule 26 obligation." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014). The mere suspicion of bad faith on the part of the government cannot be used as a dragnet to authorize voluminous discovery that is irrelevant to the remaining issues in a case. A district court's discretion to order discovery, although broad, is clearly "cabined by Rule 26(b)(1)'s general requirements," *id. at* 994, which allow parties to discover "any nonprivileged matter that is relevant to [a] claim or defense and proportional to the needs of the case,"[2] FED. R. CIV. P. 26(b)(1); *see also Food Lion v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." (internal quotation marks omitted)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, n.17 (1978) (concluding that plaintiffs sought information without "any bearing . . . on issues in the case" and noting that "when the purpose of a discovery request is to

---

[2] At the time *AF Holdings* was decided, Rule 26 required "a discovery order be '[f]or good cause' and relate to a 'matter relevant to the subject matter involved in the action.'" 752 F.3d at 995 (quoting FED. R. CIV. P. 26(b)(1) (2000)). However, in the 2015 Amendments, those portions of Rule 26 were removed and the Rule was narrowed to only allow discovery of any "nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*[.]" FED. R. CIV. P. 26(b)(1) (2015) (emphasis added); *see also id.* advisory committee's note to the 2015 amendment ("The amendment deletes the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action."). Explaining that the "for good cause" and "any matter relevant to the subject matter" language was "rarely invoked," the Committee noted that these and other changes were made to "guard against redundant or disproportionate discovery." *Id.* This change only strengthens Petitioners' argument that the District Court abused its discretion in ordering these depositions.

gather information for use in proceedings other than the pending suit, discovery properly is denied").

Here, the District Court ordered Secretary Clinton's deposition primarily to probe her motives for using a private email server and her understanding of the State Department's records-management obligations. *See* Mem. Order at 10, ECF No. 161. However, neither of these topics is relevant to the only outstanding issue in this FOIA litigation – whether the State Department has conducted an adequate search for talking points provided to Ambassador Rice following the September 11, 2012 attack in Benghazi, or for any communications or records related to those specific talking points. *See* Compl. at ¶ 5, ECF No. 1. The proposed inquiries are not, as Judicial Watch insists, "vital to determining the adequacy of the search for records at issue in [its] FOIA request," Pl.'s Reply at 10, No. 1:14-cv-1242, ECF No. 144 (Oct. 3, 2019), and we find there is little reason to believe that the information sought will be relevant to a claim or defense as required by Rule 26. *See AF Holdings*, 752 F.3d at 995 (finding discovery improper where the information sought would not meet the Rule 26 standard and would "be of little use" in the lawsuit).

The District Court has impermissibly ballooned the scope of its inquiry into allegations of bad faith to encompass a continued probe of Secretary Clinton's state of mind surrounding actions taken years before the at-issue searches were conducted by the State Department. Secretary Clinton has already answered interrogatories from Judicial Watch on these very questions in the case before Judge Sullivan, explaining the sole reason she used the private account was for "convenience." Resp. to Order at 3, No. 1:14-cv-1242,

ECF No. 143 (Sept. 23, 2019).[3] But more importantly, even if a deposition of Secretary Clinton were to somehow shake some novel explanation loose after all these years, this new information simply would have no effect on the rights of the parties in this FOIA case, making it "an inappropriate avenue for additional discovery." Status Rep. at 5, ECF No. 133. As the Department of Justice argued below:

> Even if this Court found that Secretary Clinton used private email with the specific intent of evading FOIA obligations, Plaintiff has already received the only relief such a finding would (arguably) make available: State's recovery, search, and processing of any records held by the former Secretary, including records that were not in the possession, custody, or control of State at the time the FOIA request was filed or the original searches were conducted.

*Id.* Discovery in FOIA cases is not a punishment, and the district court has no basis to order further inquiry into Secretary Clinton's state of mind, which could only conceivably result in relief Judicial Watch has already received – discovery. *See Baker & Hostetler*, 473 F.3d at 318. Furthermore, a bad-faith inquiry in a FOIA context is only relevant as it goes to the actions of the individuals who conducted the search. *See, e.g.*, *Ground Saucer Watch*, 692 F.2d at 771-72 (reviewing accusations of bad faith on the part of the CIA stemming from how officials instructed employees

---

[3] *See* Pet. at 27-28 (citing Resp. to Order at Ex. A, ECF No. 143 (Interrogatory 7, inquiring about the reasons why Secretary Clinton used a private email account; Interrogatories 4, 5, 6, and 20 asking about the process by which she made this decision; and Interrogatories 7, 8, and 9, inquiring whether FOIA or other recordkeeping laws played any role in her decision to use a private server)).

to conduct searches, how they construed the nature and scope of the FOIA request, and the failure to produce certain later-uncovered documents). Since there is no evidence Secretary Clinton was involved in running the instant searches – conducted years after she left the State Department – and since she has turned over all records in her possession, *see* Status Rep. at 6, ECF No. 133, the proposed deposition topics are completely attenuated from any relevant issue in this case.

As to Ms. Mills, who already testified for seven hours in the case before Judge Sullivan, including on Secretary Clinton's use of a private email and FOIA, Resp. to Order at 1, No. 1:14-cv-1242, ECF No. 142 (Sept. 23, 2019), there is no new information that justifies a duplicative inquiry that is also irrelevant to the remaining issues in the case. *See* Mot. for Discovery at 4, ECF No. 22 (Judicial Watch noting, nine months before Ms. Mills' deposition, its awareness of some 31,830 emails deemed private by Secretary Clinton). Ms. Mills was no longer employed by the State Department when these FOIA searches were conducted, and the District Court's general belief that discovery was appropriate because the State Department "mishandl[ed] this case," Mem. Order at 1, ECF No. 161, has no link to a far-reaching deposition of Ms. Mills.

Second, the District Court abused its discretion by misapplying the relevant legal standard for a FOIA search. It is elementary that an agency responding to a FOIA request is simply required to "conduct[] a 'search *reasonably calculated* to uncover all *relevant documents*.'" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984)) (emphasis added). Unlike the Federal Records Act – which requires federal agencies to protect against the removal or loss of records, 44 U.S.C. § 3105, and allows certain

parties to bring suit to compel enforcement action to recover unlawfully removed or destroyed documents, *id.* § 3106(a); *see also Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3 (D.C. Cir. 2018) – the appropriate inquiry under FOIA is much more limited. In a FOIA case, a district court is not tasked with uncovering "whether there might exist any other documents possibly responsive to the request," but instead, asks only whether "the *search* for [the requested] documents was *adequate*." *Weisberg*, 745 F.2d at 1485 (citations omitted).

Here, rather than evaluating whether the State Department's search for documents related to Ambassador Rice's Benghazi talking points was adequate, the District Court has instead authorized an improper Federal Records Act-like inquiry to uncover purely hypothetical emails or communications. *Ground Saucer Watch*, 692 F.2d at 772 (explaining that "unadorned speculation" cannot compel further discovery). The District Court attempted to justify the instant depositions, in part, because approximately thirty "previously undisclosed" emails were produced by the FBI in unrelated litigation and because it felt the State Department "failed to fully explain the new emails' origins[.]" Memo. Order at 1-2, ECF No. 161. However, these documents – all of which Judicial Watch has conceded are nonresponsive to its FOIA request, *see* Tr. of Proc. at 35, ECF No. 156, and which it seems were in fact in the State Department's possession but were simply not searched in response to this narrow FOIA request, Oral Arg. Tr. at 52-53, – do not call into question the adequacy of the search or justify this wide-ranging and intrusive discovery.

It is well established that the reasonableness of a FOIA search does not turn on "whether it actually uncovered every document extant," *SafeCard Servs.*, 926 F.2d at 1201, and that

the failure of an agency to turn up a specific document does not alone render a search inadequate, *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). In fact, this Court has stated that the belated disclosure of even *responsive* documents does not necessarily undermine the adequacy of an agency's search. *See, e.g.*, *Goland*, 607 F.2d at 374; *Ground Saucer Watch*, 692 F.2d at 772. But here, the District Court determined that the discovery of nearly thirty *nonresponsive* documents that were already in the State Department's possession justified the depositions of persons who were not even involved in the search. We disagree and point the District Court back to the sole, narrow inquiry before it – whether the State Department made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quotation marks omitted).

Third, the District Court failed to properly consider the central factor in this FOIA case – whether the agency's search was reasonably calculated to discover the requested documents – by disregarding this Court's recent decision in *Pompeo*, 744 F. App'x at 4. The District Court premised its approval of Petitioners' depositions partially on its belief that the State Department had "failed to persuade the Court that all of Secretary Clinton's recoverable emails have been located." Mem. Order at 2, ECF 161. However, it made this proclamation without addressing this Court's decision in a recent Federal Records Act case between the same parties affirming that the State Department "ha[d] already taken every reasonable action to retrieve any remaining [Clinton] emails." *Pompeo*, 744 F. App'x at 4. In *Pompeo*, we found that "no imaginable enforcement action" could turn up additional emails and stated that it was "both fanciful and unpersuasive" to claim that the State Department had not

done enough to retrieve emails from persons outside the agency with whom the Secretary may have corresponded. *Id*. Although *Pompeo* did not address this specific search for Ambassador Rice's Benghazi talking points, its language is clear – the State Department has exhausted every reasonable means to retrieve *all* of Secretary Clinton's recoverable emails. *Id.* Although we decline to adopt Petitioners' characterization of this as a "mootness" issue, *see* Pet. at 19-22, we find the District Court did err by failing to address our findings in *Pompeo* and simply insisting Petitioners' depositions would somehow squeeze water out of the rock. If a search for additional Clinton emails has been exhausted in a Federal Records Act case – under a statutory scheme that does provide a process for the recovery or uncovering of removed records – the grounds for continued foraging in the more limited context of a FOIA case are fatally unclear.

## C.

This brings us to the third prong of the *Cheney* standard, which asks if the Court, "in the exercise of its discretion, [is] satisfied" that issuance of the writ "is appropriate under the circumstances." 542 U.S. at 381. Applying this "relatively broad and amorphous" standard, *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 762, we find the totality of circumstances merits granting the writ.

We observe, at the outset, that although Judicial Watch devotes considerable attention to the first two prongs of *Cheney*, *see* Judicial Watch Resp. at 11-24, it "offers no reason, nor can we detect one, why we should withhold issuance of the writ if [Secretary Clinton] is otherwise entitled to it." *In re Mohammad*, 866 F.3d 473, 475 (D.C. Cir. 2017) (per curiam); *see generally* Judicial Watch Resp. Because the mandamus prongs are jurisdictional, *Am. Hosp. Ass'n*, 812

F.3d at 189, Judicial Watch's failure to address the third prong is not dispositive, *see Montrois v. United States*, 916 F.3d 1056, 1060 (D.C. Cir. 2019) ("We must assure ourselves of the existence of jurisdiction even though no party argues it is lacking."), but our own review of the issue leads us to conclude that *Cheney*'s third prong is satisfied. In light of the importance of the congressional aims animating FOIA, and in order to forestall future, similar errors by district courts that would hamper the achievement of those aims, we find that the totality of the circumstances counsels us to hold, in the exercise of our discretion, that mandamus is appropriate under these circumstances.

While "[i]n the 'normal course, mandamus is not available to review a discovery order', . . . . [m]andamus *is* appropriate [] where review of an order 'after final judgment is obviously not adequate.'" *In re Al Baluchi*, 952 F.3d 363, 368 (D.C. Cir. 2020) (quoting *In re Executive Office of President*, 215 F.3d 20, 23 (D.C. Cir. 2000)) (emphasis added) (alteration omitted). In this vein, courts have found mandamus appropriate in the discovery context where necessary to correct an error with potentially far-reaching consequences. *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 763 ("This Court has long recognized that mandamus can be appropriate to 'forestall future error in trial courts' and 'eliminate uncertainty' in important areas of law." (quoting *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 524 (D.C. Cir. 1975)); *In re Sims*, 534 F.3d 117, 128-29 (2d Cir. 2008) (mandamus may be appropriate to review discovery orders involving privilege where "immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege"); *Colonial Times, Inc.*, 509 F.2d at 524 (mandamus may be appropriate where resolution of discovery issue will "add importantly to the efficient administration of justice"); *Sanderson v. Winner*, 507 F.2d

477, 479 (10th Cir. 1974) (per curiam) (granting mandamus to vacate discovery order where district court's "decision [w]as an unwarranted extension" of Supreme Court precedent, "which extension would limit and curtail" a federal rule "in a manner never contemplated").

These considerations counsel the issuance of the writ in the instant circumstances. As already noted, the District Court's Order reflects a deeply flawed view of both FOIA and Rule 26, with the result that the contemplated discovery has traveled far afield from the narrow issue in this FOIA case – the adequacy of the State Department's search for documents relating to talking points *given to Ambassador Rice for a single day's television appearances*. Compl. at ¶ 5, ECF No. 1 (emphasis added); *see also Iturralde*, 315 F.3d at 315 (emphasizing that, under FOIA, the adequacy of the search is measured "by the appropriateness of the methods used," "not by the fruits of the search"). While the first rounds of discovery may have, as the District Court stated, prompted "more questions than answers," Mem. Order at 1, ECF No. 161, a court may not order discovery to probe any subject that piques curiosity, *see* FED. R. CIV. P. 26(b)(1), especially in the circumscribed posture of a FOIA case. Here, the FOIA request is for Benghazi-related documents actually given to Ambassador Rice, but the depositions were to ask why Secretary Clinton set up a private server years earlier and with whom she generally corresponded. None of this bears on the question of what documents, if any, were given to Ambassador Rice about the Benghazi attack.

Illustrating the inappropriateness of the ordered discovery, the District Court authorized Judicial Watch to depose Secretary Clinton and Ms. Mills about "their knowledge of the existence of any emails, documents, or text messages related to the Benghazi attack." Mem. Order at 10,

ECF No. 161. However, the only basis for this request that Judicial Watch now points to is a passage in one of the nearly thirty nonresponsive emails discussed above, which suggests that Huma Abedin sent Secretary Clinton texts about the latter's schedule. *See* Judicial Watch App'x at 15. These unrelated text messages, although potentially piquing the court's curiosity, simply cannot justify the requested depositions. First, during the events in question, electronic messages (such as text messages), were not considered federal agency records under the Federal Records Act. *See* 44 U.S.C. § 2911(c)(1) (amending the Act in November 2014 to include "electronic messages" or "electronic messaging systems that are used for purposes of communicating between individuals[]"); *see also Guidance on Managing Electronic Messages*, Bulletin 2015-02 (July 29, 2015) (setting forth new records management requirements that apply to electronic messages, including text messaging), https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html. While this quirk of timing may not bar the State Department from searching for pre-2014 text message records in response to another FOIA request, Judicial Watch's "mere speculation" about the existence of relevant text messages in this case is certainly insufficient to compel further discovery here. *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam) ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency [has] conducted an adequate search for the requested records.").

Second, this is not a case of a government agency refusing to provide records from a personal email that is the subject of a direct FOIA request, *see, e.g.*, *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 146-47 (D.C. Cir. 2016), or arguing that certain records are not in its control and as such cannot be produced, *see, e.g.*, *Kissinger v.*

*Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 151-57 (1980). Judicial Watch has conceded that it is not alleging a "cover-up" by either Secretary Clinton or Ms. Mills, *see* Oral Arg. Tr. at 46, and there is no evidence or even an accusation that Secretary Clinton or Ms. Mills communicated about the specific issue at hand – Ambassador Rice's talking points or their creation – in a method that would not have been captured by the State Department's search to date. For example, in opposing the State Department's motion for summary judgment, Judicial Watch filed a Rule 56(d) declaration specifying the additional discovery it sought and made no mention of the prospect of outstanding text messages or other electronic communications. Mot. for Discovery at 8, ECF No. 22. Instead, Judicial Watch specified that it sought "limited" discovery, focusing exclusively on email records. *Id.* at 1. The closest Judicial Watch came to raising the prospect of text messages was to request "[i]nformation about what electronic and computing devices (BlackBerrys, iPhones, iPads, laptops, desktops, etc.) were used by key officials, their locations and Defendant's ability to search for potentially responsive records" – devices that have already been turned over to the State Department and examined. *Id.* at 8; *see also Pompeo*, 744 F. App'x at 4 (detailing the FBI's search of Secretary Clinton's devices). Again focusing on email records, Judicial Watch elaborated that it sought those devices because it believed that Secretary Clinton may have used "a Blackberry and iPad as Secretary for her government email." Mot. for Discovery at 8 n. 15, ECF No. 22.

"To be sure, there are limits to the impact of a single district court ruling . . . . But prudent counsel monitor court decisions closely and adapt their practices in response." *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 762-63. If left unchecked, the premise that such wide-ranging discovery

should and will be countenanced under FOIA "would extend the FOIA to an essentially limitless number of materials . . . . The Act was not intended to be accorded such a reach." *Wolfe v. Dep't of Health & Human Servs.*, 711 F.2d 1077, 1081 (D.C. Cir. 1983). Such an "unwarranted extension" of FOIA, certainly "never contemplated" by Congress, *see Sanderson*, 507 F.2d at 479, would threaten an exponential increase in putative FOIA suits seeking commensurate levels of irrelevant and potentially harassing discovery.

FOIA represents a "congressional commitment to transparency," *Judicial Watch, Inc. v. Dep't of Defense*, 913 F.3d 1106, 1109 (D.C. Cir. 2019) – a commitment whose fulfillment would be substantially hampered were judicial and other governmental resources devoted not to the iterated topics of FOIA requests and suits, but to free-ranging and perpetually evolving inquiries for which FOIA requests served as mere jumping-off points. The important aims at the core of FOIA therefore counsel us not to let the instant error lie. *Cf. Colonial Times, Inc.*, 509 F.2d at 524 (mandamus may be appropriate to "add importantly to the efficient administration of justice"). In the face of the District Court's "clear abuse of discretion" in ordering this discovery, we find the writ is "appropriately issued," *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964), to "forestall future error in trial courts" considering similarly attenuated discovery requests under FOIA*, see Colonial Times, Inc.*, 509 F.2d at 524.

The circumstances under which this particular discovery order arises only buttress our finding of the appropriateness of mandamus. Judicial Watch does not in fact want for the information it purports to seek and has already been afforded extensive discovery related to the proposed deposition topics. In this FOIA case alone, it has taken eighteen depositions and propounded more than four times the presumptive maximum

number of interrogatories. S*ee* Status Rep. at 1-3, No. 154; FED. R. CIV. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories[.]"). In its parallel FOIA case before Judge Sullivan, Judicial Watch received sworn interrogatories from Secretary Clinton herself as well as a lengthy deposition of Ms. Mills and seven other witnesses, traversing the proposed deposition topics and resulting in the identification of no additional records responsive to the instant FOIA request. Mem. Order at 13-14, No. 13-cv-1363, ECF No. 73 (May 4, 2016). As discovery progressed, Judge Sullivan invited Judicial Watch to seek leave to serve even more interrogatories if there were "follow up questions" it had been "unable to anticipate," Mem. Op. at 18-19, No. 1:13-cv-1363, ECF No. 124 (Aug. 19, 2016), an avenue Judicial Watch did not pursue.

Judicial Watch also has available to it a voluminous public record about the proposed deposition topics. As noted, several executive agencies and a House Select Committee have conducted inquiries into Secretary Clinton's use of a private email server and made their findings public.[4]

---

[4] *See* Pet. at 26 n.5 (citing U.S. Department of State, Office of Inspector General*, Evaluation of the Department of State's FOIA Processes for Requests Involving the Office of the Secretary* (Jan. 2016), https://www.stateoig.gov/system/files/esp-16-01.pdf; U.S. Department of State, Office of Inspector General, *Office of the Secretary: Evaluation of Email Records Management and Cybersecurity Requirements* (May 2016), https://fas.org/sgp/othergov/state-oig-email.pdf; U.S. Department of Justice, Office of Inspector General, *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* (June 2018), https://www.justice.gov/file/1071991/download; House of Representatives Select Committee on Benghazi*, Final Report of the Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi*, H.R. Rep. No. 114-848 (2016), https://www.congress.gov/congressional-report/114th-congress/house-report/848/1).

Secretary Clinton also provided eleven hours of public testimony before the House Select Committee, *see* The Select Committee on Benghazi, *Hearing 4 – Former Secretary of State Hillary Clinton* (Oct. 22, 2015), https://archives-benghazi-republicans-oversight.house.gov/hearings/hearing-4, and has answered countless media inquiries on the matter. These facts underscore both the impropriety of the District Court's Order and the appropriateness of turning the page on the issue.[5]

## CONCLUSION

For the reasons set forth above, we grant the petition for mandamus as to Secretary Clinton, deny it as to Ms. Mills and dismiss Ms. Mills' petition for lack of jurisdiction, and remand the case for proceedings consistent with this opinion.

*So ordered.*

---

[5] Especially in light of Judicial Watch's present access to extensive information responsive to its proposed deposition topics, the deposition of Secretary Clinton, if allowed to proceed, at best seems likely to stray into topics utterly unconnected with the instant FOIA suit, and at worst could be used as a vehicle for harassment or embarrassment. We refrain from opining further on these topics except to observe that neither path can be squared with the dictates of either FOIA or Rule 26.