# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 11, 2022        Decided July 15, 2022

No. 20-5318

RYAN NOAH SHAPIRO,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00313)

*Jeffrey Light* argued the cause and filed the briefs for appellant.

*Michael A. Tilghman II*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *R. Craig Lawrence*, *Peter C. Pfaffenroth*, and *Kenneth A. Adebonojo*, Assistant U.S. Attorneys.

Before: TATEL[*], WILKINS, and RAO, *Circuit Judges*.

---

[*] Judge Tatel assumed senior status after this case was argued and before the date of this opinion.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: This appeal arises from a series of Freedom of Information Act requests seeking records related to the animal rights movement. During five years of litigation, the Federal Bureau of Investigation produced tens of thousands of pages of responsive documents. The district court found that the FBI had adequately searched for responsive records and granted summary judgment in its favor. The FOIA requester now challenges the adequacy of the search for electronic surveillance records, as well as several of the district court's interlocutory rulings. Because we agree with the district court that the FBI's search was largely adequate, we affirm in most respects. We remand, however, for the Bureau to provide a more detailed explanation of its search for electronic surveillance records related to individuals mentioned in but not party to monitored conversations.

**I.**

Dr. Ryan Noah Shapiro is an animal rights activist and researcher on topics including government investigations of the animal rights movement. While a doctoral candidate at the Massachusetts Institute of Technology, Shapiro submitted hundreds of FOIA requests seeking government records concerning individuals, organizations, publications, and events related to animal rights activism. In the year before the suit commenced, Shapiro was the FBI's most prolific FOIA requester. At their peak, his requests accounted for up to seven percent of the Bureau's monthly FOIA intake. This case involves eighty-three such requests covering sixty-nine topics initially pursued in four separate lawsuits, which the district court consolidated.

At the litigation's outset, the FBI estimated that it would need to review about 350,000 pages potentially responsive to Shapiro's requests. Pointing to the substantial volume of these potentially responsive records and the FBI's FOIA backlog, the government sought what is known as an *Open America* stay, under which the district court relaxes FOIA deadlines when an agency "is deluged with a volume of requests" that makes timely compliance infeasible. *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976). Agreeing that the government "ha[d] shown both exceptional circumstances and due diligence" in responding to Shapiro's requests, the district court entered a five-year *Open America* stay and ordered the government to file quarterly status reports. *Shapiro v. DOJ (Stay Order)*, No. 12-cv-313, 2014 WL 12912625, at *2 (D.D.C. Dec. 8, 2014).

Two months after the district court's stay order, the FBI made its first rolling disclosure, covering requests Shapiro identified as his highest priorities. The volume of potentially responsive documents exceeded the Bureau's initial estimate. During the following years, the FBI reviewed over 600,000 pages of potentially responsive documents and disclosed nearly 40,000. The Bureau completed its processing of Shapiro's FOIA requests in April 2017, about five months before the district court's stay was set to expire, and then moved for summary judgment.

Citing purported "misrepresentations" and "potential bad faith," Shapiro sought leave pursuant to Federal Rule of Civil Procedure 56(d) to conduct wide-ranging discovery in advance of summary judgment, including interrogatories, document production, and oral depositions of FBI personnel. In the alternative, Shapiro urged the court to deny the government's summary judgment motion and direct it to file supplemental

declarations regarding the adequacy of its search for electronic surveillance records.

The district court denied Shapiro's request for discovery and granted summary judgment to the government. It found that Shapiro's claims of bad faith were "simply not persuasive," credited the FBI's declarations, and concluded that they demonstrated the agency had adequately searched for responsive records. *Shapiro v. DOJ*, No. 12-cv-313, 2020 WL 3615511, at *7, 9–11 (D.D.C. July 2, 2020).

On appeal, Shapiro abandons his argument that the FBI acted in bad faith but nonetheless contends that the district court should have allowed him to conduct discovery and that the FBI failed to demonstrate that its records search was adequate. He also challenges the now-expired *Open America* stay and the district court's decision to accept a declaration in support of the government's stay motion in camera. "We review de novo the adequacy of the agency's search," *Reporters Committee for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (cleaned up), and "review a district court's refusal to grant a Rule 56(d) request under an abuse of discretion standard," *United States ex rel. Folliard v. Government Acquisitions, Inc.*, 764 F.3d 19, 25 (D.C. Cir. 2014) (cleaned up).

## II.

"The Freedom of Information Act requires agencies to comply with requests to make their records available to the public . . . ." *Oglesby v. Department of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). "To prevail on summary judgment, an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit,

setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Reporters Committee*, 877 F.3d at 402 (alteration in original) (quoting *Oglesby*, 920 F.2d at 68). "In a FOIA case, a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the *search* for [the requested] documents was *adequate*.'" *In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020) (alteration in original) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "Summary judgment is inappropriate if a review of the record raises substantial doubt as to the search's adequacy, particularly in view of well defined requests and positive indications of overlooked materials." *Reporters Committee*, 877 F.3d at 402 (cleaned up).

At the outset, we note that Shapiro's FOIA requests presented the FBI with a Herculean task, and nothing in the record suggests that it approached this task with anything less than utmost seriousness. Following the district court's *Open America* stay order, the FBI promptly processed tens of thousands of pages that Shapiro identified as his highest priorities for disclosure. It then continued to process his requests at an impressive clip until it ultimately completed its disclosures well within the time the district court allowed.

The present dispute centers not on the FBI's diligence or good faith, but rather on whether its search methods for electronic surveillance records were reasonably calculated to locate all responsive materials. To answer this question, we begin by describing the FBI's recordkeeping systems and its search of those systems for responsive records. In so doing, we accord the FBI's declarations "'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Bartko*

*v. DOJ*, 898 F.3d 51, 74 (D.C. Cir. 2018) (some quotation marks omitted) (quoting *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

According to its declarations, the FBI catalogues its records in two sets of indices, each searchable through its automated case management systems. First, the FBI maintains "all information that it has acquired in the course of fulfilling its mandated law enforcement responsibilities" in its "Central Records System" (CRS). Second Hardy Decl. ¶ 10, Joint Appendix (J.A.) 152. The FBI accesses CRS through its General Indices, which have been digitized since 1995 in the FBI's Automated Case Support (ACS) system. *Id.* ¶¶ 12–13, J.A. 153.

Second, the FBI maintains "Electronic Surveillance ('ELSUR') Indices, a separate system of records from the CRS." *Id.* ¶ 15, J.A. 155. These indices, the Bureau's declarations explain, include "individuals who were the targets of surveillance, other participants in monitored conversations and the owners, lessees, or licensors of the premises where the FBI conducted the electronic surveillance." *Id.* ¶ 16, J.A. 155. Since 1991, the FBI has maintained its ELSUR indices in "an automated system," *id.*, and the Bureau's "prior ELSUR indices interfaced with ACS upon its implementation in 1995," Sixteenth Hardy Decl. ¶ 115, J.A. 516. According to the FBI's declarations, "information from both ELSUR and the CRS are indexed and retrieved via index searches of the FBI's two case management systems: ACS and Sentinel." *Id.*, J.A. 516–17 (internal quotation marks omitted).

At oral argument, government counsel confirmed that the FBI's general and electronic surveillance indices function essentially as library card catalogues, allowing Bureau personnel to search for relevant files without examining every

raw case file directly. Recording of Oral Arg. 10:35–13:41. Because both sets of indices are searchable through the FBI's ACS and Sentinel systems, searching those systems allows Bureau personnel to search for both general and electronic surveillance records. ACS searches, the FBI's declarations explained, "equate to searches of the ELSUR indices." Sixteenth Hardy Decl. ¶ 115, J.A. 517. In this case, "the FBI conducted ELSUR indices searches" for records responsive to Shapiro's requests by "searching ACS." *Id.*, J.A. 516 (internal quotation marks omitted).

Despite the FBI's statement that it searched its ELSUR indices, Shapiro contends that the search was inadequate because it failed to separately search a variety of other records systems mentioned in internal FBI documents—the ELSUR Recordkeeping System, the ELSUR Data Application, and the ELSUR Data Management System. But the FBI's declarations clearly stated that "the names of all individuals whose voices have been monitored" are included in the ELSUR indices that it searched. Second Hardy Decl. ¶ 17, J.A. 156. As government counsel explained at oral argument, the additional systems Shapiro identified are "systems that maintain records as opposed to the indices of records," and the files in those systems "would show up [in] the indices." Recording of Oral Arg. 13:43–15:32. Essentially, Shapiro faults the FBI for searching its card catalogues rather than leafing through every book in the library. But our FOIA precedent, under which an agency's search need only be "reasonably expected to produce the information requested," does not require what the government represents would be a redundant search of individual electronic surveillance files. *Reporters Committee*, 877 F.3d at 402 (internal quotation marks omitted).

Nor did the FBI fail to set forth "the type of search performed" and "the search terms" used. *Id.* (internal quotation

marks omitted). In its declarations, the FBI explained which recordkeeping systems it searched and how. Moreover, it set forth the search terms that it used in its search for ELSUR records: "the subjects [Shapiro] identified in his requests." Second Hardy Decl. ¶ 21, J.A. 157. At oral argument, Shapiro's counsel conceded that "[t]he district court knew what keywords were used to search the ACS," but complained that the FBI never specified what keywords it used for "a separate search [of] the ELSUR indices." Recording of Oral Arg. 34:02–34:24. The answer, as the FBI's declarations explained, is that the Bureau searched its ELSUR indices *through* ACS. There was no "separate search" for which the FBI failed to set forth the search terms it used.

Despite the FBI's good-faith effort to process the voluminous requests, we agree with Shapiro that its declarations inadequately address one class of records: those related to individuals mentioned in monitored communications but not directly targeted for surveillance. According to its declarations, the FBI's electronic surveillance indices include "the names of all individuals whose voices have been monitored," but for many years field offices have not been "required to forward to [FBI headquarters] the names of all individuals mentioned during monitored conversations." Second Hardy Decl. ¶¶ 17–18, J.A. 156. Although "some" field offices continue to include mentioned names in their local indices, "the names of such individuals cannot be retrieved through the [headquarters] ELSUR Index." *Id.* ¶ 18, J.A. 156. The FBI's declarations do not explain how the ACS search conducted in this case would have revealed electronic surveillance "mentions" if Bureau field offices omit those references from ELSUR indices. A limited remand is appropriate for the FBI to fill this gap in its declarations.

We have repeatedly made clear that "discovery in a FOIA case is rare" and courts should generally order it only "where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search." *In re Clinton*, 973 F.3d at 113 (internal quotation marks omitted); *see, e.g.*, *Freedom Watch, Inc. v. NSA*, 783 F.3d 1340, 1345–46 (D.C. Cir. 2015) (holding that "the district court had discretion to forgo discovery" absent "evidence to support [an] allegation" of bad faith (cleaned up)); *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) (holding that "the district court's grant of summary judgment without discovery was within its discretion" because "plaintiffs ha[d] made no showing of [agency] bad faith"). And even where we have found an agency's affidavits to be inadequate to support summary judgment, we have held that the appropriate remedy is usually to allow the agency to "submit further affidavits" rather than to order discovery. *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 892 (D.C. Cir. 1995). Finding no evidence of bad faith—a finding Shapiro does not challenge on appeal—the district court acted within its "broad discretion to manage the scope of discovery" when it denied Shapiro's request for extensive document production and oral depositions of FBI personnel. *SafeCard*, 926 F.2d at 1200. Consistent with these principles, on remand the district court need not allow discovery if further declarations will suffice.

## III.

We turn next to Shapiro's arguments that the district court erred in two of its interlocutory orders. Neither, however, is properly before us.

## A.

Shapiro's challenge to the district court's stay order is moot. "Simply stated, a case is moot when the issues presented

are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). The *Open America* stay expired years ago after the FBI finished processing documents responsive to Shapiro's FOIA requests. Now that the FBI has turned over all responsive documents, we lack authority to turn back the clock and compel the FBI to hand them over faster. Accordingly, we are unable to offer Shapiro "any effectual relief" related to the stay. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992).

Conceding that the *Open America* stay "is no longer live," Shapiro contends that we may nonetheless review it because it presents an issue "'capable of repetition, yet evading review.'" Appellant's Reply Br. 10 (quoting *PETA v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005)). Under this doctrine, federal courts may decide a controversy that would otherwise be moot if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

The dispute here is incapable of repetition because, rather than presenting "legal questions" likely to recur in future litigation, it turns on "highly fact-specific" details of Shapiro's requests. *Gittens*, 396 F.3d at 422–24. Observing that "the FBI could not reasonably have planned for a single citizen to consume such a vast quantity of the agency's FOIA resources," the district court found that a stay was warranted because Shapiro's requests were "unusually voluminous, complicated, and interconnected." *Stay Order*, 2014 WL 12912625, at *1–2. And Shapiro, for his part, disputes the district court's finding that the FBI exercised due diligence in responding to these

extraordinary requests. That is, he contends that the district court "erred factually." *Spivey v. Barry*, 665 F.2d 1222, 1234 (D.C. Cir. 1981). But "[a]s we have made clear, a legal controversy so sharply focused on a unique factual context will rarely present a reasonable expectation that the same complaining party would be subjected to the same actions again." *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (cleaned up).

We also decline Shapiro's request to vacate the *Open America* stay under *United States v. Munsingwear*, 340 U.S. 36 (1950), which allows vacatur "'[w]hen a civil case becomes moot pending appellate adjudication.'" *Humane Society of the United States v. Kempthorne*, 527 F.3d 181, 184 (D.C. Cir. 2008) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997)). The stay became moot when it expired in 2017, not while this appeal was pending. Shapiro cites no authority suggesting that *Munsingwear* allows litigants to seek vacatur of a district court's long-moot interlocutory orders after the end of litigation, and we see no reason to extend the doctrine to this novel context.

**B.**

Finally, Shapiro seeks to unseal a declaration filed in camera in support of the government's stay motion. He contends that the district court erred by failing to apply the standard set forth in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), governing the common-law right of public access to judicial records. But in his motion, Shapiro never asserted that the declaration was a judicial record, invoked the common-law right of public access, or so much as mentioned *Hubbard*. Instead, he relied exclusively on our court's decision in *Lykins v. DOJ*, 725 F.2d 1455 (D.C. Cir. 1984), governing in camera submissions in FOIA cases, and the district court

denied his motion under that standard. If Shapiro wishes to press his argument that the right of public access requires unsealing, he must do so in the first instance before the district court.

## IV.

For the foregoing reasons, we remand for the FBI to further explain its search for electronic surveillance "mentions," we dismiss Shapiro's appeal insofar as it challenges the district court's stay order, and we affirm the district court's judgment in all other respects.

*So ordered.*