# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 22-5155**

**September Term, 2023**

FILED ON: DECEMBER 21, 2023

LASSANA MAGASSA,
             APPELLANT

v.

TRANSPORTATION SECURITY ADMINISTRATION,
             APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01953)

———

Before: RAO and GARCIA, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the district court's order granting summary judgment be **AFFIRMED**.

## I.

Lassana Magassa submitted a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request to the Transportation Security Administration ("TSA") for any records about him, specifically documents related to additional security screening that he was subject to while traveling through five American airports in 2016 and 2017 and to whether he has ever been on the Terrorist Watch and Selectee Lists. TSA identified 231 responsive pages but produced only 49 pages, 23 of which were redacted, withholding the bulk as Sensitive Security Information ("SSI") exempt from disclosure by the Homeland Security Act and FOIA Exemption 3. TSA refused to "confirm or deny" the existence of any records that might indicate Magassa's Watch List status.

After an unsuccessful administrative appeal, Magassa sued, contending that TSA withheld documents beyond the scope of FOIA's circumscribed Exemptions, failed to conduct an adequate search, and did not disclose all reasonably segregable nonexempt materials. Compl. (Jun. 28,

2019).  The district court granted TSA summary judgment, *Magassa v. TSA* (D.D.C. Mar. 31, 2022), and Magassa now appeals.  Upon *de novo* review, *ACLU v. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011), the court affirms.

## II.

Based on Exemption 3, TSA withheld 182 pages and redacted 20 pages of responsive documents as "specifically exempted from disclosure by [another] statute."  5 U.S.C. § 552(b)(3)(A).  The applicability of Exemption 3 depends on two questions: (1) "Does the statute meet Exemption 3's requirements"; and (2) "[D]oes the information that was withheld fall within that statute's coverage?"  *Labow v. Dep't of Just.*, 831 F.3d 523, 527 (D.C. Cir. 2016) (internal citation omitted).

The parties agree that the Homeland Security Act, 49 U.S.C. § 114(r), is a proper Exemption 3 withholding statute.  The information withheld by TSA fits within its scope.  Section 114(r) exempts information from disclosure which, if made public, would be "detrimental to the security of transportation."  In affidavits, TSA explained that the information at issue is "used by a passenger screening system and/or concerns screening procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto."  If this type of information about security screening processes were made public, TSA states, bad actors and "terrorists [could better] evade or circumvent transportation security screening procedures" and those planning attacks could "identify operatives who have or have not previously been identified as a threat."

Magassa contends that this explanation is too vague and general to identify any concrete risk of harm to transportation security.  Appellant's Br. 25-27.  But an agency's justification for invoking a FOIA exemption must merely be "logical" or "plausible."  *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).  TSA explained how disclosing information about transportation security screening protocols risks undermining the effectiveness of those programs, which depend on some degree of secrecy and the appearance as much.  Especially in national security contexts, agency affidavits "will always be speculative to some extent, in the sense that [they] describe[] a potential future harm."  *Id.* at 374.  The court affords TSA's expert assessment of these contingent harms "great deference," *CIA v. Sims*, 471 U.S. 159, 179 (1985), and will not "substitute [its] own assessment for the Executive's predictive judgments on such matters, all of which are delicate, complex, and involve large elements of prophecy."  *Trump v. Hawaii*, 138 S. Ct. 2392, 2421 (2018) (internal citation omitted).  TSA's explanation here is reasonable.

## III.

On three pages, TSA redacted the names of certain agents who were "responsible for processing [Magassa's] redress inquiry."  FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  TSA concluded that the sensitive nature of the agents' duties, which includes handling inquiries related to federal terrorism watchlists, placed them at a heightened risk of harassment or retaliation.  Magassa maintains that the agents' names lie beyond the proper scope of Exemption 6 because government employees have only a *de minimis* privacy

interest in the disclosure of their names, outweighed by the public's interest in government disclosure. Appellant's Br. 32-35.

The Exemption 6 inquiry is contextual. The court has upheld the redaction of the names of government employees whose sensitive positions might subject them to a heightened risk of harassment or harm. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006) (internal citations omitted). TSA's explanation that the nature of these specific agents' work, which involves screening potentially violent and dangerous people, including those on national security Watch Lists, "plausibl[y]," *Wolf*, 473 F.3d at 374-75, identifies a concrete and heightened risk of retaliation sufficient to establish a non *de minimis* privacy interest. Nor is there a strong public interest in the disclosure of the names. The relevant inquiry focuses only on "the extent to which disclosure would serve" FOIA's raison d'être of "contribut[ing] significantly to public understanding of the operations or activities of the government." *Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (internal citation and emphasis omitted). To the extent that these documents shed light on TSA's operations, it does not follow that the incremental disclosure of the names of specific employees conducting sensitive screening would further such a transparency interest. *See Judicial Watch*, 449 F.3d at 153.

**IV.**

Magassa contends that TSA failed to conduct a sufficiently wide-ranging search for potentially responsive documents or to show that it disclosed all reasonably segregable nonexempt materials in its eventual production. Appellant's Br. 18-21, 37-39. TSA had two of its national program branches and its local offices at the five airports where Magassa indicated he had been questioned run searches based on Magassa's name across the agency's email, share-drive, screening system, and database systems. This suffices to demonstrate that TSA conducted "a good faith" search using "reasonabl[e]" methods. *Shapiro v. Dep't of Just.*, 40 F.4th 609, 612 (D.C. Cir. 2022) (internal citations omitted).

Magassa maintains that the search was insufficiently exhaustive because it was not aimed at identifying a separate category of records related to Magassa's status as an airport employee credential holder. Appellant's Br. 18-21. But despite clarifying the request's scope in several emails with TSA, Magassa's counsel never referenced these records or Magassa's status as an airport employee badge holder. Agencies are "not obliged to look beyond the four corners of [a FOIA] request for leads to the location of responsive documents," *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996), nor search for documents "not reasonably suggest[ed]" by a request. *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009). Agencies must undertake "good faith" search efforts, *Shapiro*, 40 F.4th at 612, not overly exhaustive ones.

TSA also met its segregability burden. For the Exemption 3 redactions and withholdings, the affidavit of TSA's SSI program chief explains that he confirmed that all the withheld and redacted information constituted statutorily exempt SSI and that "the smallest possible portion of the record possible" was redacted. For the Exemption 6 redactions, the affidavit of TSA's FOIA officer indicates that she redacted only the specific agent names. Absent contrary evidence, TSA is therefore entitled to the presumption of compliance with its segregability obligations. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (internal citation omitted). Nor was

3

the district court required to conduct *in camera* review before making a segregability finding, as *in camera* review is generally at the district court's discretion and is neither "necessary nor appropriate" when, as here, an agency has met its burden through public affidavits. *Larson*, 565 F.3d at 869-70 (citation omitted). It is especially disfavored in national security contexts. *Id.*

## V.

Magassa also challenges TSA's *Glomar* response, *see PETA v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014) (internal citation omitted), refusing to confirm or deny the existence of records that might indicate Magassa's Watch List status. But Magassa failed to exhaust these objections in his administrative appeal. Even though TSA's initial response included express *Glomar* text, Magassa's administrative appeal does not raise it or the Watch List records. A failure to exhaust the administrative appeals process precludes judicial review in FOIA cases. *See, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003). Magassa's failure to put TSA on notice of his objections to the *Glomar* response, or to give the agency an opportunity to respond, precludes any belated judicial review of those contentions. *Dettmann v. Dep't of Just.*, 802 F.2d 1472, 1476-77 (D.C. Cir. 1986).

\*     \*     \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**

Mark J. Langer, Clerk

BY:     /s/

Daniel J. Reidy
Deputy Clerk

4